# United States District Court, Northern District of Illinois



| Name of Assigned Judge or Magistrate Judge | James B. Moran | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 7865 | **DATE** | 3/12/2002 |
| **CASE TITLE** | Ruby Reed etc. Vs. City of Chicago etc. et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Memorandum Opinion and Order

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant City of Chicago's motion to dismiss is granted in part and denied in part, and defendant Edwards Medical Supply, Inc.'s motion to dismiss is denied. The Eighth Amendment claim in count I is dismissed, and count II is also dismissed. Status hearing set for April 2, 2002 at 9:15am.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | MAR 14 2002 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 13 |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| WAH | courtroom deputy's initials | 02 MAR 13 PM 2:28 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RUBY REED, Special Administrator of )
the Estate of J. C. REED, Deceased, )
 )
        Plaintiff, )
 )
vs. ) No. 01 C 7865
 )
CITY OF CHICAGO, a municipal )
corporation, TIMOTHY GOULD, BRUCE )
YOUNG, BRIAN PEMBERTON, SUSAN )
MADISON and EDWARDS MEDICAL )
SUPPLY, INC., )
 )
        Defendants. )

DOCKETED
MAR 14 2002

## MEMORANDUM OPINION AND ORDER

Plaintiff Ruby Reed has sued the City of Chicago (City), Timothy Gould, Bruce Young, Brian Pemberton, and Susan Madison (police officers), and Edwards Medical Supply, Inc. (EMS), alleging constitutional violations, negligent supervision, willful and wanton conduct, strict product liability, negligent product design and manufacture, and breach of warranty. The City has moved to dismiss three of the claims against it and EMS has moved to dismiss all of the claims against it. For the following reasons, the City's motion is granted in part and denied in part, and EMS' motion is denied.

## BACKGROUND

Plaintiff Ruby Reed brings this action as the special administrator of her son J. C. Reed's estate. On November 12, 2000, J. C. Reed (Reed) was arrested and brought to the City's Fifth District Police Station, where he was placed in a detention cell controlled and managed by defendant police officers. Allegedly, the police officers knew that Reed was

mentally unstable and suicidal, had witnessed him attempting suicide by slitting his wrists, and failed to adequately monitor the cell. The officers removed his clothing and provided him with a paper isolation gown, which he used to hang himself. Plaintiff claims that the officers found her son, still alive, hanging in his cell, but did not provide proper medical care. Subsequently, Reed died. Plaintiff sues the City for negligence, and the City and the police officers for violations of her son's Eight and Fourteenth Amendments, and for willful and wanton conduct.

Plaintiff maintains that the gown used by Reed was manufactured and designed by EMS with the knowledge that it might be worn by a suicidal detainee. Allegedly, the gown was defectively designed in that it did not tear when Reed hung himself; thus, plaintiff sues EMS under product liability and breach of warranty theories.

## DISCUSSION

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), we accept as true all well-pleaded factual allegations of the complaint, drawing all reasonable inferences in a plaintiff's favor. Midwest Grinding Co. v. Spitz, 976 F.2d 1016, 1019 (7th Cir. 1992). A claim survives if relief could be granted under any set of facts that could be proved consistent with the allegations. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) *citing* Conley v. Gibson, 355 U.S. 41, 45-46 (1957). While a complaint does not need to specify the correct legal theory to withstand a Rule 12(b)(6) motion, the complaint must allege all elements of a cause of action necessary for recovery. Ellsworth v. City of Racine, 774 F.2d 182, 184 (7th Cir. 1985), *cert. denied,* 475 U.S. 1047 (1986).

City's Motion to Dismiss

Count I of plaintiff's amended complaint, brought under 42 U.S.C. 1983, alleges that the police officers' conduct and the City's policies violate the Eighth and Fourteenth Amendments. The Eighth Amendment applies to persons who have been convicted – a pretrial detainee such as Reed must base a claim on the due process clause of the Fourteenth Amendment. Mathis v. J.W. Fairman, 120 F.3d 88 (7th Cir. 1997) (noting that the rights of a pretrial detainee under the due process clause are at least as great as the rights of a convicted prisoner). Accordingly, we dismiss the portion of count I stating a claim under the Eighth Amendment and retain the portion that states a claim under the Fourteenth Amendment.

In count II, plaintiff claims that the City was negligent when it allegedly breached a duty to carefully supervise, train and hire the defendant police officers. A local government unit may be liable in tort, but the Illinois legislature has conditioned potential liability by enacting the Local Governmental and Governmental Employees Tort Immunity Act (the Act). 745 ILCS 10/1-101. The City seeks shelter under section 2-201 of the Act: "[A] public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." 745 ILCS 10/2-201. While section 2-201 refers to a public employee, local governments may also be shielded from immunity under this provision. 745 ILCS 10/2-109 ( a local public entity is not liable for an injury resulting from an act or omission of its employee, where the employee is not liable); Taylor v. City of Chicago, 1997 WL 51445 *4 (N.D.Ill. 1997) (suing a city for failure to train, supervise, and guide its police officers is essentially a claim against the city for the acts of its

employees who are charged with executing training, supervision, and control of programs).

In applying section 2-201, the Illinois Supreme Court requires that conduct be both an exercise of discretion and a policy determination to garner immunity. Harineck v. 161 North Clark Street Ltd., 181 Ill.2d 335, 343, 692 N.E.2d 1177, 1182 (1998). Discretionary acts are those which are unique to a public office, while ministerial acts are executed in obedience to legal authority and without reference to the official's discretion as to the propriety of the act. Snyder v. Curran Township, 167 Ill.2d 466, 474, 657 N.E.2d 988, 993 (Ill. 1995). The distinction between discretionary and ministerial acts is not always clear, and courts have decided this issue on a case-by-case basis. *See e.g.*, Johnson v. Mers, 279 IllApp.3d 372, 380, 664 N.E.2d 668, 674 (2d Dist. 1996) (finding that a village's hiring of officer was discretionary); Hayes v. City of Des Plaines, 182 F.R.D. 546, 552 (N.D.Ill. 1998) (decision by officers to leave interviewee in a room alone was an exercise of discretion).

The alleged conduct must also be a determination of policy for the city to be immune. Harineck 181 Ill.2d at 343. An act is a determination of policy if it requires a balancing of interests and making a judgment call as to which solution would best serve each of those interests. *Id* at 342. The conduct can be a determination of policy even if it does not occur at the planning level or involve the formulation of principles to achieve a common public benefit. Harrison v. Hardin County Community Unit School District No. 1, 197 Ill.2d 466, 758 N.E.2d 848, (Ill. 2001) (finding a decision to deny a student's request to leave school early due to weather involved a determination of policy).

Here, plaintiff argues that the alleged negligent supervision, training and hiring are most likely ministerial acts governed by orders or rules and that it is too early in the pleading

stage to find as a matter of law that the claimed acts are discretionary. Plaintiff asserts no implication of policy determinations in the hiring and supervising of individual officers. While there are most likely guidelines in hiring, training and supervising employees, all three acts still require discretion, balancing of interests, and judgment calls. Additionally, the Illinois Supreme Court has considered actions towards one person to be under its umbrella of policy determinations. Harrison, 197 Ill. 2d at 474. The alleged conduct in count II is discretionary activity and involves determinations of policy, to which the City is immune.

The City also characterizes the allegations of willful and wanton conduct in count III as a policy claim and seeks immunity under section 2-201 of the Act. *See generally* In re Chicago Flood Litigation, 176 Ill.2d 179, 680 N.E.2d 265 (Ill. 1997). Additionally, the City argues it is immune under section 4-103. 745 ILCS 10/4-103 (2000) (immunity from allegations of inadequate jail facilities). Plaintiff asserts that both sections are inapplicable, arguing that in count III she has successfully stated a claim for willful and wanton breach of a duty to summon immediate medical care. While count III does include language of practices, policies and customs, it also includes the specific allegation that the City, with reckless disregard, failed to provide proper medical care. The alleged willful and wanton failure to provide proper medical care to a pretrial detainee lies outside the scope of the claimed immunity, and count III stands.

### EMS' Motion to Dismiss

In counts IV, V and VI plaintiff makes claims against EMS under strict product liability, negligence and breach of warranty theories. The elements of the three asserted claims are not identical, but recovery under each theory requires a plaintiff to show a causal

relationship between the alleged defective product and claimed injury. Grant v. Chemrex, Inc. 1997 WL 223071 (N.D.Ill. 1997). EMS moves to dismiss all three claims for failure to sufficiently plead proximate cause.

Generally, proximate cause is a question for the trier of fact, First Springfield, 188 Ill.2d at 257, but a claim fails if it offers no allegations that, if true, would establish proximate cause. Kleen v. Homak,, 321 Ill.App.3d at 642, 749 N.E.2d at 29. Proximate cause is a legal term representing the common sense notion that a closer causal connection should be required for liability than an act or omission being the cause in fact of an injury. The Illinois Supreme Court has explained that whether the defendant's act is the proximate cause of an injury depends upon whether the injury was of a type that a reasonable person would see as a likely result of his or her conduct. First Springfield Bank & Trust v. Galman, 188 Ill.2d 252, 256, 242 Ill.Dec. 113, 720 N.E.2d 1068 (1999). Proximate cause must be alleged in each of the claims asserted by plaintiff against EMS. Kleen v. Homak Manufacturing Company, Inc., 321 Ill.App.3d 639, 641 749 N.E.2d 26, 255 Ill.Dec. 246 (1st Dist. 2001) (concept of proximate cause is the same in negligence and strict liability in tort); Roback v. V.I.P. Transport, Inc., 1994 WL 327414 (N.D.Ill.1994). aff'd, 90 F.3d 1207 (7th Cir. 1996) (breach of implied warranty and strict liability are nearly identical; warranty claims fail if there is an inadequate connection between alleged conduct and damages).

EMS argues that Reed's suicide and the City's alleged negligence were independent acts that break any causal connection between any act or omission of EMS and the alleged injury. EMS also asserts that the defective gown was merely a condition making the injury possible. It relies on Kleen v. Homak to support its argument. 321 Ill.App.3d at 642, 749 N.E.2d at 29. In Kleen, the court found that it was not reasonably foreseeable that creating

an allegedly defective gun-safe lock would result in someone breaking into the safe, taking out a gun, and using the gun to kill himself. The court in Kleen then went on to state that the allegedly defective product was only a passive condition that allowed the injury to occur. *Id* at 643.

Both parties refer to Gilbertson v. Rolscreen Company, 150 IllApp.3d 192, 501 N.E.2d 954, 103 Ill.Dec. 637 (2d Dist. 1986), as instructive on the issue of cause. In Gilbertson, liability was sought against a manufacture of a window when a patient at a psychiatric hospital jumped out of a window of her room. *Id* at 194. The court found that even if the window was considered in an unreasonably dangerous condition, that condition was not the proximate cause of plaintiff's injuries. *Id* at 197. The court offered two independent theories for the lack of proximate cause: the use of the window was not one reasonably foreseeable to the manufacturer, and the allegedly dangerous product only served as a condition making the injury possible. *Id.*

Here, plaintiff alleges that the gown was manufactured and designed by EMS with the knowledge that it might be worn by suicidal detainees. Plaintiff specifically claims that EMS designs and manufactures its paper gowns to break away in the event a person attempts to use the gown to hang himself. Allegedly, the gown provided Reed was defective in that it did not tear when Reed used it to hang himself. Are the injuries claimed something that a reasonable person would see as a likely result of producing a defective gown used by suicidal detainees? At this point, plaintiff has claimed enough of a connection between EMS' allegedly defective gown and the claimed injuries to preclude finding the injuries unforeseeable as a matter of law..

As to EMS' assertion that Reed's suicide and the police officers' alleged negligence were independent intervening causes of the claimed injuries, we note that there can be multiple proximate causes of an injury. <u>Lundy v. Whiting Corp</u>, 93 Ill.App.3d 244, 251, 417 N.E.2d 154, 161 (Ill.App. 1981). As more of the facts in this case are flushed out, EMS will have the opportunity to restate its argument that Reed's suicide and the officers' alleged negligence were intervening acts that render the allegedly defective gown a mere condition to injury. At this stage of the pleadings, however, we will not dismiss plaintiff's claims for failure to plead proximate cause.

## CONCLUSION

For the above reasons, defendant City of Chicago's motion to dismiss is granted in part and denied in part, and defendant Edwards Medical Supply, Inc.'s motion to dismiss is denied. The Eighth Amendment claim in count I is dismissed, and count II is also dismissed.

JAMES B. MORAN
Senior Judge, U. S. District Court

March 12, 2002.