IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RUBY REED, Special Administrator )
of the Estate of J. C. REED, Deceased, )
)
Plaintiff, )
)
vs. ) No.01 C 7865
)
CITY OF CHICAGO, et al., )
)
Defendants. )

## MEMORANDUM OPINION AND ORDER

Plaintiff Ruby Reed, as Special Administrator of the Estate of J.C. Reed, deceased, brought this action against the City of Chicago, Timothy Gould, Bruce Young, Brian Pemberton, Susan Madison, Edwards Medical Supply, Inc., Cypress Medical Products, Ltd., Cypress Medical Products, Inc., Medline Industries, Inc., Thai Hospital Products Company, Ltd., and Midpack Corporation, for damages associated with the death of J.C. Reed. Plaintiff's complaint alleges civil rights violations, negligence, and willful and wanton conduct against defendants City of Chicago, Gould, Young, Pemberton and Madison, and allegations of strict products liability, negligence and breach of warranty against defendants Edwards, Cypress, Ltd., Cypress, Inc., Medline, Thai Hospital Products and Midpack. After failing to convince this court in an initial motion for summary judgment, Medline brought a second motion for summary judgment on February 3, 2005. Plaintiff's opposition to that motion, filed on February 13, 2006, included 23 exhibits, the last of which was a report by expert Steven Frumkin in support of plaintiff's opposition to summary judgment. Defendant Medline then filed this motion to strike Frumkin's report as unqualified under FED. R. EVID. 702. For the

reasons stated below, we grant defendant's motion to strike Frumkin's report.

## BACKGROUND

On November 12, 2000, J.C. Reed committed suicide in a City of Chicago police lockup by hanging himself with an isolation gown provided to him by the police department. J.C. Reed's mother, plaintiff Ruby Reed, brought this action against the City, the officers on duty at the lockup, and the alleged manufacturers of the gown. As to the manufacturers, plaintiff alleges that the isolation gown was designed and marketed to break or tear away in the event a person attempted to use it to hang himself, and the gown failed to tear away, leading to Reed's death. Plaintiff further alleges that the failure of the gown to tear away was a breach of implied and express warranties, and defendant manufacturers should be held liable in strict liability and negligence. Plaintiff's claims against the manufacturers primarily turn on the foreseeability of the isolation gown's use as a suicide-prevention device and the existence of any express or implied warranties.

## DISCUSSION

The admission of expert evidence is regulated by Rule 702 and the Supreme Court's analysis in <u>Daubert v. Merrell Dow Pharmaceuticals</u>, 509 U.S. 579 (1993).[1] Rule 702 states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

---

[1] Rule 702 was amended in 2000 to include three specific requirements for expert testimony admissibility, in response to <u>Daubert</u> and its progeny. Although Rule 702 has technically superceded <u>Daubert</u>, the Seventh Circuit has consistently referred to <u>Daubert</u> for guidance. *See* <u>Naeem v. McKesson Drug Co.</u>, ___ F.3d ___, 2006 WL 932354 (7th Cir.2006); <u>Fuesting v. Zimmer, Inc.</u>, 421 F.3d 528 (7th Cir.2005); <u>Durkin v. Equifax Check Services, Inc.</u>, 406 F.3d 410 (7th Cir.2005).

In Daubert, the Supreme Court explained, "the Rules of Evidence – especially Rule 702 – do assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand. Pertinent evidence based on scientifically valid principles will satisfy those demands." 509 U.S. at 597. *See also* Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 141 (1999) (applying Daubert's "gatekeeping" obligation to testimony based not only on scientific knowledge, but also on "technical" and "other specialized" knowledge). In this case, Medline argues that Frumkin's report is inadmissible under Daubert and Rule 702 because it "does not establish any applicable expertise, does not cite any legitimate authorities, is based on insufficient and erroneous 'facts,' and does not contain any basis for establishing its reliability" (def's mem. at 1). Plaintiff vehemently disagrees and contends that "Professor Frumkin's opinions are competent and admissible as evidence" (plf's response at 2).

The Seventh Circuit has interpreted Daubert to require a two-step inquiry to determine expert fitness under Rule 702. First, we must determine whether the expert's testimony pertains to scientific knowledge. O'Connor v. Commonwealth Edison Co., 13 F.3d 1090, 1106 (7th Cir.1994). Such a determination requires us to "consider whether the testimony has been subjected to the scientific method; it must rule out 'subjective belief or unsupported speculation.'" *Id.* (*citing* Porter v. Whitehall Laboratories, Inc., 9 F.3d 607, 613 (7th Cir.1993)). Second, we must "'determine whether the evidence or testimony assists the trier of fact in understanding the evidence or in determining a fact in issue. That is, the suggested scientific testimony must 'fit' the issue to which the expert is testifying.'" *Id.* (*citing* Porter, 9 F.3d at 616). Thus, it is our responsibility to make sure that, prior to admission into the record, an expert's testimony is both reliable and relevant. Masters v. Hesston Corp., 291 F.3d 985, 991

(7th Cir.2002); Dewick v. Maytag Corp., 324 F.Supp.2d 894, 897 (N.D.Ill.2004). Defendant challenges Professor Frumkin's qualifications on both grounds. We will address each argument in turn.

An expert's opinion is reliable if the "expert is qualified in the relevant field and [] the methodology underlying the expert's conclusions is reliable." Masters, 291 F.3d at 991 (*citing* Smith v. Ford Motor Co., 215 F.3d 713, 718 (7th Cir.2000)). In determining an expert's qualifications we consider his "'full range of practical experience as well as academic or technical training.'" U.S. v. Parra, 402 F.3d 752, 758 (7th Cir.2005) (*citing* Smith, 215 F.3d at 718). Ultimately, however, boasting years of education and experience is insufficient; we must "assess the reliability of the *methodology* the expert has employed in arriving at his opinion." Fuesting, 421 F.3d at 535 (emphasis in original). Thus, "experts' work is admissible only to the extent it is reasoned, uses the methods of the discipline, and is founded on data. Talking off the cuff – deploying neither data nor analysis – is not an acceptable methodology." Lang v. Kohl's Food Stores, Inc., 217 F.3d 919, 924 (7th Cir.2000). Defendant contends that Frumkin's report is unsupported and conclusory (def's mem. at 6). Plaintiff strongly disagrees, claiming that "Professor Frumkin's methodology and principles are sound and reliable as applied to the facts in this case" (plf's response at 8). Specifically, plaintiff notes that Frumkin's opinions rely on his "vast experience and knowledge in the apparel and textile industry," along with "the history in the industry, the published industry history, including his own scholarly publications, case histories, custom and practice in the industry, and his role as a teacher and lecturer, among other resources." (*Id.*)

In the cover letter to his report, Frumkin states that he conducted extensive investigation and review, including "extensive reading of provided legal documents (filings and

depositions, etc.), a governmental regulatory search with regard to proper warnings and labeling required, and a review of channels of distribution and product liability," along with "[c]ommon business practiced [sic] – industry practice," including "an investigation of similar and related business practices of Medline Industries" (Frumkin report, at 1). In coming to his conclusions, however, Frumkin does not cite to any authority or describe how he formulated his opinions. He concludes: "Based on the convergence of the above personal experience and conducted research I can execute my opinion: that the City of Chicago and ultimately Mr. Reed was ill served, ill advised, and not properly warned about potentially life threatening dangers. Therefore, Medline was deficient in their failure to warn, instruct or otherwise participate in their responsibilities to their customer or end user. Medline clearly produced an unreasonably dangerous garment for the purpose for which it was used, and breached its warranty as a merchantable product for its foreseeable use" *(id.,* at 8). Other than an allusion to his background and personal experience, Frumkin cites to few and somewhat irrelevant sources, including online dictionary definitions for paper and legal cases from New York State and other unidentified jurisdictions. Although Frumkin states that it is "usual and customary" to have a compliance officer *(id.,* at 5), it is "standard practice and procedure in the industry to warn and advise the next person in the chain of distribution" *(id.),* and that the "knowledge in the industry of incidents of suicide and the types of environments at risk is well known and understood" *(id.,* at 6), Frumkin does not define the industry, point to any collaborating authority, or even describe how he came to such conclusions. Finally, although Frumkin states that Medline could have provided warning labels or information sheets to provide for further safety, he does not point to any studies showing the use or success of such warnings.

Plaintiff suggests that we should not strike Frumkin's report simply because it is not

persuasive, arguing that an effective adversary system, including cross-examination and competing expert witnesses, is sufficient to maintain the integrity of the judicial system (plf's response at 2). In <u>Daubert</u> and its progeny, however, the Supreme Court suggests that we must act as a gatekeeper at this stage to ensure the reliability of expert witnesses. And while it is true that "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence" (<u>Daubert</u>, 509 U.S. at 596), such safeguards are not a basis for admitting otherwise inadmissible evidence. <u>Loeffel Steel Products, Inc. v. Delta Brands, Inc.</u>, 387 F.Supp.2d 794, 800 (N.D.Ill.2005). Because bare conclusions and naked opinions fail the first prong of the expert opinion admissibility test (*see* <u>Fuesting</u>, 421 F.3d at 536; <u>McMahon v. Bunn-O-Matic</u>, 150 F.3d 651, 658 (7th Cir.1998)), we find that Frumkin's report is inadmissible under Rule 702. *See* <u>Naeem v. McKesson Drug Co.</u>, 2006 WL 932354 at *11 (admission of expert testimony was in error where expert did not tie his conclusions to specific citations to the policy manual, and appeared to be giving "general observations regarding what is normal or usual business practice"); <u>Durkin v. Equifax Check Services, Inc.</u>, 406 F.3d 410 (7th Cir.2005) (affirming exclusion of expert linguist's proposed testimony because expert endorsed plaintiff's claims without explaining how he came to such conclusions); <u>Dewick</u>, 324 F.Supp.2d at 900 ("without his having tested the efficacy of Maytag's original warning or having drafted alternate warnings or having offered any other comparably reliable methodology, Hyde's opinions on that subject cannot be characterized as anything more than speculation or personal observation"); <u>Stasior v. National R.R. Passenger Corp.</u>, 19 F.Supp.2d 835 (N.D.Ill.1998) (expert opinion as to foreseeability that plaintiff would develop carpal tunnel syndrome was not reliable under <u>Daubert</u> because expert could not cite any studies

during the relevant years showing that the work conducted by plaintiff was scientifically connected to carpal tunnel syndrome).

Even if we were to find that Frumkin's report was reliable, it would still be inadmissible because Frumkin's expertise lacks relevance to the case. Defendant argues that "there is absolutely no basis upon which to conclude that Mr. Frumkin is qualified to testify concerning the provision of isolation gowns to a jail and, more specifically, whether the use of an isolation gown as a hanging device should be reasonably expected by a medial [sic] supply distributor." We agree that the bulk of Frumkin's report and experience is irrelevant to the issues in contention in this motion for summary judgment, and thus fails the second prong of the Daubert test.

FED. R. EVID. 402 states that "Evidence which is not relevant is not admissible," and FED. R. EVID. 401 defines "relevant evidence" to be "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Because Professor Frumkin's report was attached in opposition to defendant's motion for summary judgment, we consider whether his findings and opinions are relevant to the issues in contention in that motion.

A close reading of the motion for summary judgment and plaintiff's response in opposition shows that the motion raises four contentious issues. First, whether defendant should have reasonably foreseen that its isolation gowns would be used for suicide prevention. Second, whether the subject gown was defective with respect to its purpose and function. Third, whether defendant made express or implied warranties with respect to the use of its gown. And finally, whether defendant was legally required to inquire as to the end use of the

subject gowns and/or provide instructions or warnings as to the use of the gowns. Frumkin's report is relevant if it both addresses any or all of these issues and his background and expertise are such that he can reliably opine on such issues.

Frumkin's report includes a short abstract, definition of the claim, short discussion of Medline Industries and its corporate governance, short discussion of supply-chains and their relationships to the end user, and four pages labeled "conclusions." The report also sets forth Medline's background and operations, an "industry background" discussion of consumer protection legislation and products liability definitions, and snippets of case law and agency reviews. Finally, the report attaches Frumkin's *curriculum vitae*, definitions of "paper," and catalogue copies of an unidentified isolation gown and Ferguson Safety Products paper gowns. Frumkin's conclusions focus on (1) the manufacturer's ability and duty to ensure proper use of its products and warn against dangerous misuse; (2) Medline's responsibility to be aware of the uses of its products; (3) allegation of breach of warranty; and (4) the foreseeability of the end use of Medline's isolation gown. Such conclusions do speak to at least some of the issues in contention in the summary judgment motion.

The relevance of the report fails, however, because Frumkin's background and expertise are not such that he can speak as an expert to any of these issues. Plaintiff spends almost five pages cataloguing Frumkin's qualifications and reciting his *curriculum vitae*. We have also examined Frumkin's background and experience, and recognize that he is well versed in many areas of textiles and manufacturing. Even defendant does not disagree with this assessment (def's mem. at 4). A witness is only qualified as an expert, however, if the "area in which the witness has superior knowledge, skill, experience, or education," matches the "subject matter of the witness's testimony." Carroll v. Otis Elevator Co., 896 F.2d 210, 212

(7th Cir.1990).

Considering Frumkin's "full range of practical experience as well as academic or technical training" (Smith, 215 F.3d at 718), we find it insufficient to provide expert status as to his testimony. His testimony focuses on consumer protection, manufacturer responsibility and foreseeability. His background focuses on general and textile manufacturing, retail strategy, textile applications, product development, and international textile markets. Frumkin's lectures focus on fashion design and global marketing. None of those experiences suggests that Frumkin would be a reliable expert regarding consumer protection or foreseeable uses of isolation gowns. Plaintiff argues that Frumkin's article "Tagless to the Rescue" is of "particular relevance to the labeling issues in this case" (plf's response at 4). A closer look reveals, however, that the focus of the article is on the comfort and financial advantages of ink process transfer directly onto garments for tagless identification. The article does not address consumer protection or warnings, as plaintiff would have us believe. Nor do his other publications, appearances or professional experiences have any greater bearing on this case. *Cf.* Baumholser v. Amax Coal Co., 630 F.2d 550 (7th Cir.1980) (affirming trial court's decision to allow geologist to testify as to the damage done by a coal mine explosion, even where geologist did not have specific experience in the effects of blasting, finding that the issues on which expert testified were "subject matter within the scope of a geologist's expertise"). Even the narrative attached to Frumkin's *curriculum vitae* belies his expertise in consumer protection, warnings, warranties, and/or suicide-prevention clothing. It states, "Professor Frumkin has been responsible for fabric styling, new product development and fiber innovations; sales management, marketing and merchandising; domestic and international financing, sourcing and U.S. Customs regulations' retail product sourcing,

placement and design" (plf's response, ex. 1, p. 10). Frumkin's background shows no signs of expertise in consumer protection or product liability, nor does it establish an expertise in manufacturer's responsibilities to the end users of their products. Therefore, we find his background and expertise fail the relevance prong of the <u>Daubert</u> test.

## CONCLUSION

For the reasons stated above, we grant defendant Medline's motion to strike the report of plaintiff's expert, Peter Frumkin. Plaintiff is granted leave to file a supplemental verified report.

JAMES B. MORAN
Senior Judge, U. S. District Court

June 1, 2006.