

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RUBY REED, Special Administrator of )
the Estate of J.C. REED, deceased, )
)
      Plaintiff, )
)
vs. ) No. 01 C 7865
)
CITY OF CHICAGO, et al., )
)
      Defendants. )

## MEMORANDUM OPINION AND ORDER

The parties in this case agree on almost nothing, which may explain why discovery is still not closed after nearly seven years. It may also help explain why plaintiff, Ruby Reed, has moved the court to sanction defendant City of Chicago for discovery abuses, and the City has replied by requesting sanctions against plaintiff. In any event, for the reasons stated below, both requests are denied.

## BACKGROUND

On November 12, 2000, J.C. Reed hanged himself while in police custody at the Fifth District lockup. During the course of its investigation into Reed's death, the City developed a 256-page file, with reports and evidence. The City provided a copy of this Complaint Register ("CR") to plaintiff as part of its Federal Rule of Civil Procedure 26(a)(1) disclosures, but some pages were difficult to read. Several times witnesses in depositions had trouble identifying or interpreting portions of documents found in the copied CR. In an attempt to correct the problem, the City provided plaintiff with new copies of the CR, but plaintiff felt that these new copies suffered from the same deficiencies as the previous ones. Plaintiff then filed an emergency motion before this court to stay future depositions until the City provided

access to the original copy of the CR for inspection and copying.

At a hearing on the motion, the City conceded that some pages of the photocopied CR were difficult to read (*See* June 5, 2007 tr. at 4), but informed the court that because the original pages were not all in the same location it would be difficult to gather the originals for the entire CR. Further, the City informed the court that they had offered to track down the original copies of the illegible pages, but plaintiff would not specify which pages were needed and instead demanded the entire CR.

We agreed that plaintiff should have the right to review the original documents and to receive legible copies. We presumed that a majority of the CR would be located in one place and that any missing pages could be tracked down and dealt with separately (*see* June 5, 2007 tr. at 5). With this in mind, we issued the following order:

> Plaintiff's emergency motion to compel inspection and copying of original documents from defendant City of Chicago is granted as stated on the record. Defendant, City of Chicago, is allowed to choose an independent copying service that will charge the plaintiff a reasonable rate. The copying charge should be the same rate that the City would pay. Both plaintiff and defendant can be present while the copies are being made. Plaintiff has the right to review the Original documents. Further depositions are stayed until after plaintiff reviews the Original documents.

(June 5, 2007, min.order). We presumed too much.

The parties were next before us for a status hearing on June 19, 2007. They were unable to agree on the meaning of our June 5, 2007, order, so we reiterated that plaintiffs were entitled to see and inspect original documents of the CR to the extent that such documents were available. We also held that an outside photo service could be used to make copies of the original documents. We then admonished the parties to set deposition dates before the next status hearing, because this case was filed in 2001.

On August 13, 2007, plaintiff filed the instant motion for sanctions. The next day,

plaintiff filed an emergency motion for a protective order and for sanctions against the individual defendants. In the motion, plaintiff argued that although the City had produced that bulk of the original CR, certain important documents, such as arrest reports of upcoming deponents were not produced. Those depositions were scheduled for that day, and the remainder of that week. Further, plaintiff argued that the City refused to allow the original arrest reports to be taken to a third party copying service.

In our absence, the motion was heard before Judge Kennelly, acting as emergency judge. Although the motion was directed to the individual defendants, the City appeared at the hearing. The City argued that of the 20 or so missing pages of the CR, most had been destroyed pursuant to the City's retention policy, and that only four arrest reports remained. Those reports were in the custody of the records division. The records division would allow the plaintiff to examine them on premises, but would not release them to a third party for copying.

Judge Kennelly, recognizing plaintiff's right to review the original documents and in an effort to give meaning to our June 5th order, granted plaintiff's emergency motion in part. The depositions were postponed, and the City was ordered to allow plaintiff access to the original arrest reports. Further, the City was ordered to allow copying of the arrest reports at Merrill Copy Service (the City's designated copier), and plaintiff was allowed to be present during the copying in order to witness and approve the copies.

After Judge Kennelly's order, we set a briefing schedule on the instant motion. The motion is fully briefed and we are ready to rule.

### ANALYSIS

Rule 37 allows courts to enter orders compelling parties to comply with discovery requests and to impose sanctions if parties fail to comply. In order to impose such sanctions,

we must find that a party displayed willfulness, bad faith, or fault. <u>In re Thomas Consolidated Industries, Inc.</u>, 456 F.3d 719, 724 (7th Cir. 2006). The burden to show such bad faith, by clear and convincing evidence, lies with the moving party. <u>REP MCR Realty, LLC v. Lynch</u>, 363 F. Supp. 2d 984, 999 (N.D. Ill. 2005). We find that neither party has met that burden.

Plaintiff argues that the City has repeatedly defied this court's discovery orders and asks for sanctions ranging from striking the City's answer and issuing default judgment for plaintiff to monetary fines. We cannot agree that the City has defied our discovery orders or attempted to frustrate discovery. A copy of the entire CR was disclosed to the plaintiff under Rule 26(a)(1). When deficiencies in that copy were identified, the City attempted, albeit unsuccessfully, to correct those deficiencies by providing new copies. We ordered the City to make the bulk of the original documents available to plaintiff and noted that the remainder could be dealt with separately. The City complied; only four arrest reports were not provided to plaintiff. Further, the City's attempt to proceed with scheduled depositions was an attempt on the part of the City to comply with this court's twin goals of providing plaintiff access to the original documents and bringing discovery to a close.

For its part, the City argues that plaintiff filed unnecessary and unfounded emergency motions as a tactic to delay the close of discovery by thwarting depositions. They seek appropriate sanctions as compensation for the resulting waste of time and resources. While we understand how the number and timing of plaintiff's emergency motions could give rise to such a theory, we cannot agree that the requests were in bad faith. To do so would overlook the fact that both this court and Judge Kennelly granted the motions in part and stayed the depositions. Further, we have ruled that plaintiff was entitled to inspect certain original documents from the CR, to receive legible photocopies of the same from a third party copier, and to be present at the time of copying. Plaintiff was entitled to these documents before the

relevant depositions.

We close by recognizing that parties to a lawsuit are entitled to zealous representation of counsel, and that sometimes zealous representation crosses the line into unacceptable conduct. We do not think that has occurred in this case, but we note that the behavior of both plaintiff's counsel and the attorney for the City toward each other may be approaching the danger zone. We encourage both counsel to review the Standards for Professional Conduct within the Seventh Federal Judicial Circuit which set out the duties lawyers have to other counsel. The standards provide in part:

> 1. We will practice our profession with a continuing awareness that our role is to advance the legitimate interests of our clients. In our dealings with others we will not reflect the ill feelings of our clients. We will treat all other counsel, parties, and witnesses in a civil and courteous manner, not only in court, but also in all other written and oral communications. 2. We will not, even when called upon by a client to do so, abuse or indulge in offensive conduct directed to other counsel, parties, or witnesses. We will abstain from disparaging personal remarks or acrimony toward other counsel, parties, or witnesses .... 4. We will not, absent good cause, attribute bad motives or improper conduct to other counsel or bring the profession into disrepute by unfounded accusations of impropriety.

*Id.* (available at http://www.ca7.uscourts.gov/Rules/rules.htm#standards).

Both plaintiff's and the City's motions for discovery sanctions are denied. The parties shall confer as soon as possible and inform the court of a mutually acceptable status date to occur before May 1, 2008. At that status hearing, the parties should come prepared to discuss in detail what discovery remains to be taken and when discovery will close, so that this matter can proceed with all dispatch.

JAMES B. MORAN
Senior Judge, U. S. District Court

April 22, 2008.